# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:05CV108-H

| | |
|---|---|
| RICHARD A. RINALDI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND ORDER** |
| ) | |
| CCX, INC., BARRY SILVERSTEIN, ) | |
| and DENNIS MCGILLICUDDY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on the Plaintiff's "Motion to Disqualify [Defendants' Counsel]" (document #5), "Brief in Support ..." (document #6), and "Affidavit ..." (document #7), all filed April 29, 2005; and the "Defendants' Response ... " (document #12) filed May 23, 2005. On June 2, 2005, the Plaintiff filed his "Reply ..." (document #13).

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>grant</u> the Plaintiff's motion, as discussed below.

## I. FACTUAL AND PROCEDURAL HISTORY

This is an action seeking damages for breach of an employment contract brought by the Plaintiff Richard A. Rinaldi, a resident of Mecklenburg County, North Carolina, against the corporate Defendant CCX, Inc. ("CCX"), a Delaware corporation with its principal place of business in Pennsylvania, and individual Defendants Dennis McGillicuddy and Barry Silverstein, both Florida residents who at the times relevant to the Complaint were, respectively, the Chairman of CCX's Board of Directors and CCX's majority shareholder.

Relevant to the subject Motion to Disqualify, the Defendants are represented in this matter by William L. Rikard, Jr., Keith M. Weddington, and Deborah L. Edney, partners (Rikard and Weddington) and Special Counsel (Edney) with the Charlotte office of the law firm Parker, Poe, Adams & Bernstein, LLP ("Parker Poe").

Sometime in August or September 1991, the Plaintiff retained Parker Poe, specifically, Mr. Rikard, who was assisted by Mr. Weddington, then an associate in the firm, to represent him concerning a dispute with the Plaintiff's previous employer, American Thread Company. Mr. Rikard and Mr. Weddington represented the Plaintiff in the American Thread matter through sometime in February 1993.

During August and September 1991, the Plaintiff also was negotiating with the Defendant CCX about becoming its President and Chief Executive Officer. As part of those negotiations, CCX gave the Plaintiff a copy of an employment contract ("the CCX draft") between CCX and another of its executives in order to provide the Plaintiff with an example of the types of contractual provisions that CCX desired to have in any contract with the Plaintiff. See Exhibit C to Plaintiff's "Affidavit ..." (document #7). The CCX draft contained, among other provisions, a clause entitled "Termination" that provided in relevant part that "[CCX] may terminate the employment of the Executive for cause, as defined herein, upon written notice to the [Plaintiff] specifying such cause; and giving cause for such termination… [f]or purposes hereof, 'cause' shall mean ... [g]ross neglect of [the Plaintiff's] obligations." Id.

It is undisputed that the Plaintiff took the CCX draft to Mr. Rikard and requested that he prepare a similar contract between the Plaintiff and CCX.

In a September 5, 1991 letter, Mr. Rikard sent the Plaintiff a first draft of the Employment

2

Agreement, but stated that he "would like to spend more time thinking about several items, particularly the stock options and the bonus plan." Exhibit D to Plaintiff's "Affidavit ..." (document #7).

The Plaintiff avers that he recalls having discussions with Mr. Rikard about the CCX draft and the Employment Agreement, including "specific discussions" concerning the meaning of the term "gross neglect." Moreover, the Plaintiff alleges that until Mr. Rikard explained the meaning of the term, he wanted it to be removed from the proposed contract, but that after his lawyer explained the term's meaning and effect, he agreed to its retention. It is undisputed that the Termination clause from the CCX draft was included verbatim in the Employment Agreement that Mr. Rikard prepared. See Exhibit H to Plaintiff's "Affidavit ..." (document #7). The Employment Agreement also provided that in the event that the Plaintiff was terminated "other than for cause," he would be entitled to severance pay equal to his annual base salary and that he also would continue to receive certain benefits for a period of 12 months. See id.

Mr. Rikard credibly avers that he has no independent recollection of his or Mr. Weddington's representation of the Plaintiff concerning the Employment Agreement, but that Parker Poe billing records reflect ten time entries between September 3 and 27, 1991 related to the Agreement, seven by Mr. Rikard, and three by Mr. Weddington. These records show that Mr. Rikard spoke to the Plaintiff concerning the Employment Agreement by telephone on three dates – on September 3, 6, and 27, 1991 – and each time for three-tenths of an hour, that is, 18 minutes. Following the third telephone call, Mr. Rikard made an unspecified "minor revision" to the Employment Agreement that consumed no more than 12 minutes of his time, and then mailed the Plaintiff the updated Agreement. Mr. Rikard further avers that any conversation that he might have had with the Plaintiff concerning

3

the meaning of the term "gross neglect ... could only have been very general and hypothetical."

Although the Defendants "presume" in their brief that the Plaintiff continued to negotiate with CCX in the interim, there is no indication in the record that any changes were made to the Employment Agreement between September 27 and November 9, 1991, when the Plaintiff and CCX executed it.

Sometime in early 1994, CCX filed a Chapter 11 bankruptcy petition. On March 25, 1994, and in conjunction with CCX's plan of reorganization that it submitted to the Bankruptcy Court, provisions in the Employment Agreement concerning the Plaintiff's compensation were amended; however, the Termination clause was unchanged.

At some time thereafter, Parker Poe and Mr. Rikard began representing CCX.

The parties dispute whether the Plaintiff resigned or was terminated, and if he was terminated, whether he was terminated for cause. The Plaintiff alleges that on October 6, 2004, he heard an office rumor that he had resigned and that he made several attempts to contact telephonically Defendants McGillicuddy and Silverstein, who allegedly were on a "year-long cruise." The Plaintiff contends that he finally reached Defendant McGillicuddy and denied having resigned, but that Defendant McGillicuddy responded only by saying "go home." The Plaintiff alleges that when he returned to work on October 7, 2004, he found that the lock on his office had been changed and that he was "otherwise prevented from entering [his] office."

In a letter dated October 6, 2004, which the Plaintiff received October 7, Defendant McGillicuddy wrote the Plaintiff that his "resignation [had been] received and accepted." Exhibit A to Plaintiff's "Reply ..." (document #13). In the same letter, Defendant McGillicuddy alleged that the Plaintiff had committed acts constituting "gross neglect" of his obligations under the

4

Employment Agreement, a condition precedent to the Defendants' present position that the Plaintiff is not entitled to any post-employment compensation. See id. At the time he stopped working for CCX, the Plaintiff's annual salary exceeded $300,000.

The Plaintiff initially retained G. Michael Barnhill to represent him concerning severance pay and other post-termination benefits to which the Plaintiff claims he is entitled. Mr. Rikard represented CCX, and beginning on October 13, 2004, had several conversations with Mr. Barnhill. The Defendants contend that Mr. Barnhill never raised any objection to Mr. Rikard's or Parker Poe's representation of CCX.

Sometime in early December 2004, the Plaintiff terminated his relationship with Mr. Barnhill.

On January 27, 2005, the Plaintiff, represented by his present counsel, Kenneth T. Lautenschlager, filed his Complaint in the Superior Court of Mecklenburg County, North Carolina, alleging a claim against CCX for breach of the Employment Agreement and claims against each of the Defendants for violations of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 et. seq.

On January 31, 2005, Mr. Lautenschlager mailed Mr. Rikard a courtesy copy of the Complaint, but also stated that it was "necessary to resolve a conflict of interest with Parker Poe's continued representation of [CCX] ... [because] [Mr. Rikard] and [Parker Poe] represented [the Plaintiff] when he entered into his initial Employment Contract with [CCX]." Exhibit B to Plaintiff's "Reply ..." (document #13).

On March 10, 2005, the Defendants removed the state court action to federal court, alleging federal diversity subject matter jurisdiction. Removal has not been challenged and appears proper.

On April 29, 2005, and prior to the Defendants filing their Answer, the Plaintiff filed his Motion to Disqualify Defendants' counsel.

The Plaintiff's Motion to Disqualify has been fully briefed as set forth above and is, therefore, ripe for determination.

## II. <u>DISCUSSION</u>

A motion to disqualify an attorney is addressed to the discretion of the district court in applying the appropriate rules of Professional Conduct. <u>Plant Genetic Systems v. CIBA Seeds</u>, 933 F. Supp. 514, 518 (M.D.N.C. 1996). However, "[even] in a close case the trial court should not engage in hair-splitting niceties but instead resolve all doubts in favor of disqualification." <u>Id.</u> at 517, <u>citing</u> <u>United States v. Clarkson</u>, 567 F.2d 270, 273 (4th Cir. 1977) ("[i]n determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing the appearance of impropriety, it is to resolve all doubts in favor of disqualification"); <u>and</u> <u>Rogers v. Pittston Co.</u>, 800 F. Supp. 350, 353 (W.D. Va. 1992).

Rule 1.9(a) of the Revised Rules of Professional Conduct of the North Carolina State Bar ("RRPC"), which is identical to Rule 1.9(a) of the Model Rules of Professional Conduct of the American Bar Association ("MRPC"), states in pertinent part (emphasis added):

> a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a <u>substantially related</u> matter in which that person's interest are materially adverse to the interest of the former client unless the former client gives informed consent, confirmed in writing.

Rule 1.10(b) of the RRPC and MRPC states that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be

prohibited from doing so by Rule ... 1.9."

"Substantiality is present if the factual contexts of the two representations are similar or related." Blumenthal Power Co., Inc. v. Browning–Ferris, Inc., 903 F. Supp. 901, 902 (D.Md. 1995) (applying MRPC 1.9(a)). "It is not necessary that two lawsuits involve the same operative facts, so long as there is a sufficient similarity of issues." Plant Genetic Systems, 933 F. Supp. at 518, citing Buckley v. Airshield Corp., 908 F. Supp. 299, 304 (D.Md. 1995). Further, the attorney's initial advice to the former client does not need to be relevant in the evidentiary sense to be "substantially related" under Rule 1.9(a). Rather, it must be related in a way that reasonable persons would understand as having importance to the issues involved in the present action. Accord In Re: American Airlines, Inc., 972 F.2d 605, 615 (5th Cir. 1993), citing In Re: Corrogated Container Antitrust Litigation, 659 F.2d 1341, 1346 (5th Cir. 1981).

"Once it is found that the subject matter of the litigation is substantially related [to the earlier legal representation], the Court will presume that relevant confidential information was disclosed." Woodhead, Inc. v. Datawatch Corp., 934 F. Supp. 181, 184 (E.D.N.C. 1995), citing In re American Airlines, 972 F.2d. at 615. In other words, once a substantial relationship between the former representation and the present lawsuit is found, "an irrebutable presumption requiring disqualification [arises]." Plant Genetic Systems, 933 F. Supp. at 518. Accord In re American Airlines, 972 F.2d. at 615 ("[t]he substantial relationship test is governed by an irrebutable presumption ... [that] is categorical in requiring disqualification upon the establishment of a substantial relationship between past and current representations"); Buckley, 908 F. Supp. at 306 ("[n]o actual receipt of confidences must be shown; such a standard would place an unreasonable burden on the moving party"); and Rodgers, 800 F.2d at 354.

As Comment 1 to Rule 1.9 states, "[u]nder this Rule, for example, a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client." "The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." Comment 2 to Rule 1.9. "When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited." Id.

Concerning the Defendants' contention that the Plaintiff waived the conflict because he did not object to Mr. Rikard's representation of CCX sometime prior to filing this lawsuit, courts routinely have held that delays substantially longer than that at issue here are insufficient to amount to waiver. Accord Cox v. American Cast Iron Pipe Co., 847 F.2d 725 (11th Cir. 1988) (18 month delay after former client learned of disqualification issue insufficient to waive conflict); Buckley, 908 F. Supp. at 308 (where former client waited two months after filing suit and one month after the conflicted attorney made an appearance, delay was not a waiver of conflict); and Lowder v. Allstar Mills, Inc., 60 N.C. App. 275, aff'd in part rev'd in part, 309 N.C. 695 (1983) (same for delay of more than one year). In Buckley, the court noted that "no trial has been set and no discovery has taken place. Moreover, the court knows of no cases, and the parties have provided none, wherein a party waived his right to object to counsel because he failed to do so prior to filing suit." 908 F. Supp. at 308.

Applying these legal principles, and although the undersigned has the highest professional and personal regard for the Defendants' counsel, out of a concern for avoiding even the appearance of impropriety as the Fourth Circuit directed in Clarkson, 567 F.2d at 273, the Plaintiff's Motion to

Disqualify must be granted. The Court empathizes with and understands that from their perspective, Mr. Rikard's and Mr. Weddington's services to the Plaintiff in drafting the Employment Agreement appeared to be relatively minor, that is, as expressed in the Defendants' brief, they believe that they were little more than scriveners who made minor modifications to a contract that the Plaintiff obtained from CCX. However, resolving all doubts in the Plaintiff's favor as we must, the Plaintiff sought his attorneys' advice and insights concerning the contents of the contract, particularly Mr. Rikard's advice concerning the implications of including the Termination clause from the CCX draft in the Employment Agreement that the Plaintiff and CCX ultimately executed.

Specifically, on September 5, 1991, two days after the Plaintiff delivered the CCX draft to Parker Poe, Mr. Rikard mailed him the first draft of the Employment Agreement but sought more time to "think" and otherwise assist the Plaintiff concerning the contents of the Agreement. Moreover, billing records show that Mr. Rikard had two subsequent telephone conversations with the Plaintiff. In light of this documentary evidence and Mr. Rikard's forthright admission that he cannot recall the specifics of his discussions with his then-client, the Plaintiff's declaration that he objected to the inclusion of "gross neglect" as a basis for termination for cause and that he relied on his attorney's explanation as to the meaning and effect of that term establishes that Mr. Rikard was serving as more than a mere scrivener. This conclusion is further buttressed by the fact that despite the passage of nearly thirteen years between his hiring and alleged termination by CCX, the Plaintiff retained Mr. Rikard's correspondence and earlier drafts of the Employment Agreement, discussed above and which were attached to the Plaintiff's Reply brief and Affidavit, as any reasonable person might do concerning advice he had received from his attorney.

In light of Defendant McGillicuddy's express invocation of "gross neglect" in his October

9

6, 2004 letter, that clearly served as the basis for CCX's present position that it is not obligated to pay the Plaintiff the post-employment compensation which is the subject of the present lawsuit, Mr. Rikard's and Mr. Weddington's prior representation of the Plaintiff is "substantially related" to issues in this case and is, therefore, violative of Rule 1.9. Accord Plant Genetic Systems, 933 F. Supp. at 518; Buckley, 908 F. Supp. at 304; and Blumenthal Power Co., Inc., 903 F. Supp. at 902.

Moreover and although the undersigned accepts completely Mr. Rikard's assurances that neither he nor his co-counsel have used any information they acquired during their representation of the Plaintiff in any fashion, much less in a manner adverse to his interests, because there is a substantial relationship between the prior representation and issues in this case, there is now an irrebutable presumption that he and his firm are disqualified from representing the Defendants in this matter. Accord In re American Airlines, 972 F.2d. at 615 ("[t]he substantial relationship test is governed by an irrebutable presumption ... [that] is categorical in requiring disqualification upon the establishment of a substantial relationship between past and current representations"); Clarkson, 567 F.2d at 273 ("with a view of preventing the appearance of impropriety, [the district court] is to resolve all doubts in favor of disqualification"); Woodhead, Inc., 934 F. Supp. at 184 (court must "presume that relevant confidential information was disclosed"); Plant Genetic Systems, 933 F. Supp. at 518 (once a substantial relationship between the former representation and the present lawsuit is found, "an irrebutable presumption requiring disqualification [arises]" ); and Buckley, 908 F. Supp. at 306 (no showing of actual receipt or misuse of confidences required).

Accordingly, where defense counsel's prior representation of the Plaintiff is substantially related to issues in and the Plaintiff notified the Defendants of the conflict contemporaneously with the filing of this lawsuit, the Plaintiff's Motion to Disqualify will be granted.

## III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. Plaintiff's "Motion to Disqualify [Defendants' Counsel]" (document #5) is **GRANTED**, that is, Defendants' present counsel William L. Rikard, Jr., Keith M. Weddington, and Deborah L. Edney, and the law firm of Parker, Poe, Adams & Bernstein, LLP, are disqualified from representation of the Defendants in this matter.

2. <u>In order to allow the Defendants adequate opportunity to retain substitute counsel, the deadline for filing an Answer or otherwise responding to the Complaint is extended until July 29, 2005</u>.

3. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED.**

**Signed: June 8, 2005**

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge